## UNITED STATES DISTRICT COURT
## NORTHERN DISTRICT OF OHIO
## EASTERN DIVISION

| | | |
|---|---|---|
| **KELLI SHOOK,** | : | **Case No. 1:04-cv-1220** |
| | : | |
| **Plaintiff,** | : | |
| | : | **JUDGE KATHLEEN O'MALLEY** |
| **v.** | : | |
| | : | |
| **CITY OF CLEVELAND,** *et al.***,** | : | **ORDER** |
| | : | |
| **Defendants.** | : | |

This is a sad case about a domestic dispute which, but for some bad choices by virtually all involved, never needed to end up before this Court.  But it has and, because the pattern of bad choices apparently has continued, it remains pending and unresolved.

Two motions are now before the Court.  The first is *Defendant Christopher J. Graham's Motion for Partial Summary Judgment* (Doc. 20), in which Graham seeks dismissal of the federal and state law claims asserted against him in Counts 1 – 6 and 8 – 12 of Plaintiff's Complaint. Graham expressly has not moved for judgment as to Count 7, which alleges conversion. The second is *Defendants', City of Cleveland, Officer James Bresnahan Jr., Lieutenant Mark Ketterer, and Lieutenant Douglas Regrut, Motion for Summary Judgment* (Doc. 25), in which the remaining Defendants (the "Municipal Defendants")[1] purport to seek dismissal of all claims asserted against

---

[1]    The Municipal Defendants include:  the City of Cleveland (the "City"), Officer James Bresnahan, Jr. ("Bresnahan"), Lieutenant Mark Ketterer ("Ketterer") and Lieutenant Douglas Regrut ("Regrut").  Unless individually identified, the reference to the "Municipal Defendants" refers to these individuals collectively. References herein to the "Officer Defendants" excludes the City.

Though originally named as a defendant, Officer Jamie Cruz has not been served with process.  Plaintiff does not dispute this fact, which is outlined in the Municipal Defendants' motion.  Accordingly, the Court formally dismisses Defendant Jamie Cruz based on Plaintiff's failure to prosecute her claims against him.

them in Plaintiff's Complaint.  The Plaintiff filed oppositions to both motions (Docs. 30 and 31).

Neither Graham nor the Municipal Defendants, however, filed reply briefs.  Because the few issues

that survive the Court's threshold rulings outlined below are interrelated and tied to the same set of

disputed material facts, this Order jointly addresses the Defendants' motions.

Graham and the Municipal Defendants arguably have presented arguments in support of

summary judgment on all but one claim (*i.e.*, conversion, as to Graham).  For the reasons that follow,

however, the Court need not address *many* of those arguments.  Before turning to the relevant facts

and law, the Court outlines below those claims and issues that remain before the Court in light of

the parties' current filings.

Given the Complaint's general lack of clarity,[2] and the Plaintiff's failure comprehensively

to address in her opposition briefs each of the legal issues raised by each Defendant's motion, the

Court is compelled to narrow the scope of its analysis by disposing of certain claims as either

"unopposed" or "unasserted."  Plaintiff's seeming desire to abandon certain of her claims by failing

to address them in her opposition briefs must be viewed as just that, abandonment of those claims.

In that regard, the Court cannot be expected to acknowledge, much less analyze, one-sided

arguments; to do so is not the Court's function.  An unopposed argument for summary judgment as

to a claim, so long as the argument has *some* facial merit, must succeed.  Such is the case here as to

---

[2]     No defendant filed a motion for a more definite statement or to dismiss early in
        this litigation, which is surprising given the general criticisms and legal attacks
        levied against the Complaint.  As a result, the Court is forced to interpret the
        character of several of the purported claims based on the Complaint's vague
        language and the parties' summary judgment filings.  Given that no Defendant
        sought to clarify or streamline the allegations, the Court construes the Plaintiff's
        claims broadly. The Court holds the Plaintiff responsible, however, for defending
        each and every asserted – or purportedly asserted – claim against summary
        judgment.

2

several of Defendants' arguments.

The court turns first to the myriad of federal claims asserted in Plaintiff's 12-count Complaint. Counts 1 – 6 purport to assert federal claims against all of the Defendants pursuant to 42 U.S.C. § 1983.[3] Collectively, these claims are premised on alleged violations of the Plaintiff's First, Fourth, Fifth, Sixth, Eighth and Fourteenth Amendment rights. Based on the facts averred in the Complaint, however, as well as a comprehensive review of all of the evidence presented to the Court thus far, it is unclear how the First, Fifth, Sixth, Eighth and Fourteenth Amendments even remotely apply, either factually or legally. Plaintiff ignores this issue in her opposition briefs, though Defendants raise it in their motions. Rather, Plaintiff's responses to the summary judgment motions rely exclusively on the Fourth Amendment, seemingly abandoning the other constitutional harms averred in the Complaint.

Plaintiff's apparent decision to re-frame her federal claim(s) is not surprising because it is clear that Plaintiff's reliance on most of the Amendments referenced in her Complaint fails *as a matter of law* in any event. For example, it is well-established that the Eighth Amendment does not apply to pre-conviction detentions. *See generally Whitley v. Albers*, 475 U.S. 312, 318 (1986) ("the Cruel and Unusual Punishment Clause was designed to protect those <u>convicted</u> of crimes") (emphasis added). Complaints regarding the circumstances of one's pre-conviction detention are analyzed solely under the Fourth Amendment. Likewise, a violation of an individual's Fifth

---

[3]     Count 6, though referring to Defendants collectively, clearly only asserts a claim based on the City's alleged failure to train or supervise its officers, presumably under *Monell v. Department of Soc. Servs. of New York*, 436 U.S. 658 (1978). Accordingly, the Court, as did the parties in their briefs, assumes that this claim is only asserted against the City. Again, like the parties, the Court also assumes that this is the only federal claim that has been (or indeed could be) asserted against the City.

3

Amendment *Miranda* rights (*i.e.*, to be informed of the right to remains silent, to have an attorney present during all questioning, *etc.*) does not provide a substantive basis for the assertion of a claim under § 1983. The *Miranda* rights, though grounded in the Sixth Amendment right to counsel and the Fifth Amendment right to remain silent, are evidentiary rights, allowing exclusion of evidence if violated. Their violation do not afford recovery of damages in a § 1983 case. So too, there can be no First Amendment violation in the absence of an allegation that the Plaintiff engaged in some form of protected speech, which she simply does not claim.

The Court concludes, accordingly, that the essence of Plaintiff's federal claims (and certain of her state claims) relate to her arrest and subsequent detention – *i.e.*, they are grounded in and governed by the Fourth Amendment.

Count 8 of Plaintiff's Complaint also purports to assert a claim under federal law. Plaintiff claims that the Defendants conspired to deprive her of her civil rights in violation of 42 U.S.C. § 1986. As Defendants point out, however, a predicate to a claim under § 1986 is an assertion that the actions at issue were motivated by racial or other class-based animus. Plaintiff's opposition brief does not even attempt to explain how her claim can survive in the absence of this critical allegation. Again, the Court assumes that the Plaintiff has abandoned (and for good reason) Count 8 of her Complaint.

Turning to the state law claims, it appears once more that, without stating so expressly, Plaintiff has chosen not to prosecute many of those claims. For example, Graham's motion seeks dismissal of all but two of Plaintiff's state law claims – *i.e.*, conversion (Count 7), and negligence (Count 9).[4] Similarly, the Municipal Defendants' motion seeks dismissal of all of Plaintiff's claims,

---

[4]        While Graham's motion references Count 9 generally, it does not specifically
        attack the negligence claim asserted in that count. Given its specific analysis as to

federal and state claims alike.  In responding to Graham's motion, however, Plaintiff addresses only those arguments relating to her federal claims under § 1983, and notes that the has not attacked her negligence or conversion claims under state law.  She completely ignores, however, Graham's arguments for dismissal of the various other state law claims asserted against him in Counts 9, 10, 11 and 12.  Effectively, Graham's motion as to those claims is unopposed.

Likewise, Plaintiff's response to the Municipal Defendants' motion addresses only the § 1983 claim <u>based on the Fourth Amendment</u> and the state law claims for false arrest (Count 9), false imprisonment (Count 9) and malicious prosecution (Count 10).  Nowhere does it address the many other state law claims purportedly asserted against the Municipal Defendants.

Whether Plaintiff simply never intended to pursue certain claims, or has chosen to abandon them so as to focus on the claims she feels are strongest, the result is the same.  It is not the Court's function to defend claims or analyze unopposed arguments for dismissal, especially when such arguments have facial merit.  Nor is it the Court's function to assume that the Plaintiff's *claim-specific arguments* that "issues of material fact" exist capture every asserted claim, thereby negating the need for a responsive argument.  This is especially in light of the fact the Plaintiff's opposition brief specifically asserts the "issue of fact" argument against some, but not all, of the asserted claims.  For this reason, and because the Court finds that the Defendants' unopposed *legal* arguments are at least colorable, any claim against which a Defendant has sought summary judgment and Plaintiff has

---

each of the other claims asserted in that count – *i.e.*, assault, battery, false arrest, false imprisonment, abuse of process, wrongful prosecution, invasion of privacy and intentional infliction of emotional distress – the Court concludes that Graham has not moved for summary judgment on the negligence component of that count.  Accordingly, as with the conversion claim in Count 7, and despite Graham's generic reference to Count 9 as a whole, the negligence claim asserted in Count 9 against Graham survives as not having been the subject of Graham's motion.

5

failed to respond will be dismissed as unopposed.  As such, the Court's analysis of the present motions is limited to only the few claims that Plaintiff herself chose to address in her opposition briefs.

As to Defendant Graham, the only claims that survive this threshold analysis are Plaintiff's: 1) § 1983 claim (limited to the Fourth Amendment); 2) negligence claim; and 3) conversion claim. As noted, Plaintiff's conversion and negligence claims survive because Graham has not moved for summary judgment as to those claims. As to all other claims purportedly asserted against Graham, Graham's motion for summary judgment is **GRANTED** and those claims are **DISMISSED**.

As to the Municipal Defendants, the claims that merit further discussion are Plaintiff's: 1) § 1983 claim (limited to the Fourth Amendment)[5]; 2)  malicious prosecution claim; 3) false arrest claim; and 4) false imprisonment claim.  As to all other claims purportedly asserted against the Municipal Defendants, the Municipal Defendants' motion for summary judgment is **GRANTED** and such claims are **DISMISSED**.

## I.    FACTUAL BACKGROUND

This case arises out of the Plaintiff's arrest for criminal trespass on June 8, 2003 at a residence owned by her then-boyfriend, Defendant Christopher Graham, and located at 2606 Oak Park Avenue in Cleveland, Ohio (the "Oak Park" house).  At the time of the Plaintiff's arrest, Graham was a police officer for the City of Cleveland, but was not on-duty.  The essence of

---

[5]    As noted above, the Court finds that the only federal claim asserted against the City is that appearing in Count 6 where Plaintiff asserts a "custom and practice" claim pursuant to *Monell v. Department of Soc. Servs. of City of New York*, 436 U.S. 658 (1978) (*i.e.*, failure to train / supervise) pursuant to 42 U.S.C. § 1983. The City has not, and does not, challenge that claim as having been <u>insufficiently plead</u> but does challenge the sufficiency of the evidence presented in support of that claim.  The Court considers that argument *infra*.

Plaintiff's allegations against Graham, the City of Cleveland and three Cleveland police officers, is that Graham "enlisted the services of his follow officers to help him end a several-year relationship . . . by having [Plaintiff] arrested, placed on suicide watch and run through the criminal justice system."[6]   Accordingly, she claims that the Defendants violated her constitutional right against unreasonable seizure and detention (Fourth Amendment), and committed various common law torts.[7]

The *general* facts are these.  Up until June 8, 2003, despite various "ups" and "downs," Plaintiff and Graham maintained a "boyfriend – girlfriend" relationship.  Following an argument that night, which took place in front of Graham's mother and throughout various rooms of the Oak Park house, Graham exited the house and called the Cleveland police with his cell phone.  His call was coded a "priority two" domestic violence call and within minutes, two on-duty officers were dispatched to, and arrived at, the Oak Park house.  Graham also placed a call to his on-duty supervisor, Lieutenant Stitt, who dispatched two additional officers to the scene – this time lieutenants, with instructions to expedite the response because a fellow officer was involved.  As each officer arrived, he briefly spoke with Graham and the other officers already on the scene.  These conversations all took place outside the Oak Park house in the front yard area.

After all four officers had arrived, and following their various conversations with Graham and each other, Plaintiff exited the house and had several emotional, but non-combative, interactions

---

[6]        *See* Doc. 30 at 2.

[7]        While Plaintiff's Complaint contains allegations of excessive force, which are also cognizable under the Fourth Amendment and § 1983, she does not challenge the Municipal Defendants' assertion that there are no facts in the record indicating that force actually was used during her arrest.  The Court assumes, accordingly, that Plaintiff's Fourth Amendment claims focus on the fact of her seizure and on the facts and circumstances of her detention.

with the officers.  Everyone agrees that, though upset, Plaintiff was not overly confrontational or abusive to the officers.  Plaintiff had no contact with Graham, verbal or otherwise, once the officers arrived.  Graham's mother left the scene immediately, without being questioned about the events she witnessed; though Plaintiff asserts she was asked if she wanted to give a statement "on her son's behalf," and she declined.

Following Plaintiff's interactions with the officers – which included turning over *her key* to the Oak Park house at one officer's request, her expression of concern in retrieving her *personal property that was in the house* and several unsuccessful requests by the officers for her to leave – Plaintiff was arrested for criminal trespass, handcuffed and placed in the back of a police car.  All of Plaintiff's interactions with the officers took place outside of the Oak Park house.  The specific location of these interactions – *e.g.*, front lawn, tree lawn or sidewalk – remains in dispute.

The officers released certain personal property items (*e.g.*, purse and book bag) and the Plaintiff's dog to a friend of Plaintiff who came to the scene after the arrest.  Plaintiff's car, however, was towed to an impound lot, despite repeated requests from the Plaintiff that her friend be permitted to take it.  Plaintiff was taken to the police station where she was booked and ultimately placed on suicide watch.  As a result, she was given only a paper gown to wear.  After approximately twelve (12) hours (an overnight stay), Plaintiff was released on her own recognizance.  Plaintiff formally was charged with criminal trespass, but the charges were dismissed for failure to prosecute when the arresting officers failed to appear at her trial.

## II.    <u>DISCUSSION</u>

Despite the Defendants' lengthy briefing on the many claims *arguably* asserted in Plaintiff's Complaint, as outlined above, few claims survive the Court's threshold ruling.  Accordingly, the

Court limits its review *infra* to the few claims that remain (as defined above).

### A.      Legal Standard

Federal Rule of Civil Procedure 56(c) governs summary judgment motions and, in pertinent part, provides:

> The judgment sought shall be rendered forthwith if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is **no genuine issue as to any material fact** and that the moving party is entitled to a judgment as a matter of law . . . . (emphasis added).

Rule 56(e) specifies the materials properly submitted in connection with a motion for summary judgment:

> Supporting and opposing affidavits shall be made on personal knowledge, shall set forth such facts as would be admissible in evidence, and shall show affirmatively that the affiant is competent to testify to the  matters stated therein . . . .  The court may permit affidavits to be supplemented or opposed by depositions, answers to interrogatories, or further affidavits. When a motion for summary judgment is made and supported as provided in this rule, an adverse party may not rest upon the mere allegations or denial of the adverse party's pleading, but the adverse party's response, by affidavits or as otherwise provided in this rule, must set forth specific facts showing that there is a genuine issue for trial.  If the adverse party does not so respond, summary judgment, if appropriate, shall be entered against the adverse party.

The movant, however, is not required to file affidavits or other similar materials negating a claim on which its opponent bears the burden of proof, so long as the movant relies upon the absence of the essential element in the pleadings, depositions, answers to interrogatories, and admissions on file. *Celotex Corp. v. Catrett*, 477 U.S. 317 (1986).

In reviewing summary judgment motions, this Court must view the evidence in a light most favorable to the non-moving party to determine whether a genuine issue of material fact exists. *Adickes v. S.H. Kress & Co.*, 398 U.S. 144 (1970); *White v. Turfway Park Racing Ass'n, Inc.*, 909

9

F.2d 941, 943-44 (6th Cir. 1990). A fact is "material" only if its resolution will affect the outcome of the lawsuit. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). Determination of whether a factual issue is "genuine" requires consideration of the applicable evidentiary standards. Thus, in most civil cases the Court must decide "whether reasonable jurors could find by a preponderance of the evidence that the [non-moving party] is entitled to a verdict." *Id.* at 252.

Summary judgment is appropriate whenever the non-moving party fails to make a showing sufficient to establish the existence of an element essential to that party's case and on which that party will bear the burden of proof at trial. *Celotex*, 477 U.S. at 322. Moreover, "the trial court no longer has a duty to search the entire record to establish that it is bereft of a genuine issue of material fact." *Street v. J.C. Bradford & Co.*, 886 F.2d 1472, 1479-80 (6th Cir. 1989) (citing *Frito-Lay, Inc. v. Willoughby*, 863 F.2d 1029, 1034 (D.C. Cir. 1988)). The non-moving party is under an affirmative duty to point out specific facts in the record as it has been established which create a genuine issue of material fact. *Fulson v. City of Columbus*, 801 F. Supp. 1, 4 (S.D. Ohio 1992). The non-movant must show more than a scintilla of evidence to overcome summary judgment; it is not enough for the non-moving party to show that there is some metaphysical doubt as to material facts. *Id*.

### B. Analysis

The above summary of the "general facts" is the only summary thus far presented that even remotely can be characterized as "undisputed" for purposes of a Rule 56 analysis. Based on the Court's complete review of the evidence, however, the above summary is incomplete. Neither Graham nor the Municipal Defendants' summaries fairly outline the undisputed facts, or all the facts (disputed or otherwise) relevant to a jury's consideration of the Plaintiff's claims. Indeed, a plethora of underlying details remain in significant dispute, as outlined Plaintiff's *unopposed* opposition

10

briefs (*i.e.*, no replies were filed challenging the factual issues asserted).[8]

Even a cursory review of the parties' briefs reveals disagreement as to the substance of various facts relevant to a jury's determination of the legitimacy of the Plaintiff's arrest; and, therefore, the legitimacy (or illegitimacy), constitutional or otherwise, of the Defendants' conduct. It is quite telling that neither Graham nor the Municipal Defendants filed reply briefs to attack the Plaintiff's argument that material issues of fact (at least as to certain claims) prevent summary judgment.  As alluded to above, it is not the Court's function 1) to speculate as to the Defendants' disagreement with the Plaintiff's characterization of the facts (as disputed), and then 2) to analyze that disagreement under Rule 56.  Given only the factual disputes identified in the Plaintiff's opposition briefs – which, though heavily "spun," certainly bear facial merit – the Defendants' failure even to resist Plaintiff's view alone provides a sufficient basis for denying the motions.

Regardless, the Court spent a considerable amount of time examining all of the evidence presented thus far and finds that genuine issues of material fact exist <u>as to the claims acknowledged</u>

---

[8]    While Plaintiff's summary of the facts is generally accurate, the Court notes that several of the Plaintiff's characterizations, though not inaccurate, may test the bounds of advocacy.  For example, based on Plaintiff's summary alone, an uninformed reader would conclude that Plaintiff was a full-time resident at the Oak Park house up until June 8, 2003.  Plaintiff's own testimony, however, reveals that not to be the case. Of course, the Defendants are not innocent on this score either.  Based on their summaries, the same uninformed reader would conclude that Plaintiff had absolutely no connection to the Oak Park house on June 8, 2003.

As is clear from the Court's review of all the evidence presented thus far, while Plaintiff certainly was not a full-time resident at the Oak Park house on June 8, 2003, the evidence certainly supports the argument that she had a privilege, or at least an "access expectation," with regard to that residence.  Obviously, such information is relevant to her arrest for criminal trespass – sparked by her then-boyfriend's call to the police – which requires that the arrestee <u>not</u> have such a privilege.

11

in Plaintiff's opposition briefs.  Indeed, the Court is confident that any objective review of the evidence would lead to the conclusion that genuine issues of material fact exist, such that a jury reasonably could conclude that the Defendants' conduct was improper.

For example, in light of the fact that, as of June 8, 2003, Plaintiff 1) had a key to the Oak Park house (which the officers knew because they retrieved it and returned it to Graham),[9] 2) had substantial personal property located in the house including furniture, bedding, cookware, clothing and her dog (again, which the officers knew), 3) regularly spent the night at the house, 4) intentionally received some, but not all, of her mail at the house,[10] 5) took phone calls at the house, and 6) essentially had open access to the house, an argument certainly can be made that Plaintiff had a reasonable expectation on June 8, 2003 that she would not be arrested for criminal trespass for remaining at the house to try to "work things out" with Graham, or, at least, to secure the return of the personal property that was in the house before leaving.

Plaintiff's expectations notwithstanding, however, the officers' deposition testimony demonstrates that each of them was operating under different, and admittedly incomplete, information.  For example, none of them claims to have been aware, or, more importantly, sought to make himself aware, of Plaintiff's true connection(s) to the Oak Park house.  The fact Plaintiff had a key to the house alone should have sparked a more thorough inquiry by the officers, especially given the fact criminal trespass was the ultimate basis for her arrest.  One officer testified that

---

[9]     This fact is troubling because the officers testified that generally it is improper to take personal property from anyone, especially if a receipt is not provided (as here).  A jury reasonably might conclude that Graham directed his fellow officers to retrieve the key and they *unlawfully* took it from the Plaintiff.

[10]     Indeed, Plaintiff testified that, rightly or wrongly, she listed the Oak Park address on previous years' tax returns, even though she was not staying there full time.

12

Plaintiff told him she lived at another residence; but Plaintiff testified that she told him she lived at the Oak Park house *and* another residence.  Either way, the fact she had a key certainly afforded her an apparent "privilege-like" connection to the Oak Park house.  Had the officers checked Plaintiff's driver's license (which listed the Oak Park house as her residence), or any number of other available resources, at least their investigation would appear to have been more complete.  In the absence of at least a facially complete investigation, a reasonable jury certainly could conclude that Plaintiff's arrest was pretextual, or at least reckless.  These deficiencies, and others, led Lieutenant Ketterer to admit that, had he known of the Plaintiff's *many* connections to the Oak Park house, *maybe* he would not have ordered the Plaintiff's arrest as he did.

Other disputed facts exist as well.  None of the testimony is clear with regard to where the Plaintiff was standing when she was arrested, which is relevant to the trespass issue because, as the officers admitted, one cannot be arrested for criminal trespass if she is standing on a sidewalk.  There is also a dispute as to exactly what was said as between the officers and Graham, and the officers and Plaintiff.  A reasonable jury could readily conclude either 1) that Graham abused his position as a police officer to induce the other officers to arrest Plaintiff without regard to the propriety of that arrest, or 2) that Plaintiff unreasonably refused to leave a premises that she had no privilege to enter and left the relatively unsuspecting officers with little choice but to forcibly remove her.

Legitimate questions also exists relative to the Plaintiff's post-arrest treatment.  For example, numerous errors with regard to Plaintiff's personal information exist in her booking paperwork (*e.g.*, height, weight, hair color, driver's license number, *etc.*).  The facts underlying Plaintiff's designation as a suicide risk also are in dispute.  Plaintiff testified that she <u>never said</u> anything to anyone about having attempted suicide; yet, one of the officers and the jailer testified that Plaintiff <u>twice</u>

13

referenced a past suicide attempt.

Further, despite references in police reports to Graham having met with the prosecutor at 11:00 p.m. on the night of the arrest, Graham testified that he did not recall visiting the prosecutor that night.  He only recalled a meeting that took place a few days later.  While a jury certainly could conclude that Graham met with the prosecutor in the late evening on June 8, 2003, the more important conclusion that the jury reasonably could reach relates to *why* Graham met with the prosecutor at that time, or, as it relates to the "state actor" requirement of the § 1983 claim, *how* he had such ready access to the prosecutor if he is just a "private citizen."

In the end, there simply are a sufficient number of disputes and/or inconsistencies to support the conclusion that the Plaintiff's claims – *i.e.*, those surviving the Court's threshold rulings – have merit.  In such a circumstance, resolution of those issues is the jury's function and not the Court's.

The Court outlines below, however, the arguments asserted in connection with each of the remaining claims *vis-a-vis* each Defendant, to confirm the "materiality" of the disputed facts with regard to each remaining claim.  Except for the claims against the City of Cleveland, the disputed facts are material and prohibit summary judgment.

### C.    The Surviving Claims and the Parties' Arguments

#### 1.    *Defendant Graham* – *§ 1983 (Fourth Amendment)*

With regard to the Plaintiff's § 1983 claim, Graham provides a single argument.  He argues that he cannot be liable because, at the time of the incident, he was acting as a "private citizen" and not as an on-duty police officer.  In support, Graham cites *Parrot v. Taylor*, 451 U.S. 527 (1981), wherein the Supreme Court outlined the elements of a § 1983 claim:

- the conduct complained of must be committed by a person acting under color of state law; and

14

- the conduct complained of must have deprived a person of rights, privileges, or immunities secured by the Constitution or laws of the United States.

In response, Plaintiff argues that 1) by omission, Graham concedes that Plaintiff was deprived of a constitutional right, and 2) that, based on the disputed facts, a reasonable juror could conclude that Graham was acting as a police officer in connection with the Plaintiff's arrest, despite the fact he was off-duty at the time.

Generally, a person who acts "under color of state law" is a public official of some sort – *e.g.*, an "on-duty" police officer.  However, a private party may be found to have acted under color of state law if he "acted together with or . . . obtained significant aid from state officials," and did so to such a degree that his actions may properly be characterized as "state action."  *Lugar v. Edmondson Oil Co.*, 457 U.S. 922, 937 (1982).  An individual may also be considered a state actor if he exercises powers traditionally reserved to a state. *Jackson v. Metropolitan Edison Co.*, 419 U.S. 345, 352 (1974).

Given the disputed facts leading up to, and following, the Plaintiff's arrest, a reasonable juror certainly could conclude that Graham used his status as a Cleveland police officer to facilitate Plaintiff's arrest and complicate her movement through the system.  As such, Graham's argument that summary judgment is appropriate simply because he was "off-duty" at the time is inadequate because it ignores the impact of the disputed facts.  Accordingly, summary judgment must be denied as to that claim.[11]

---

[11]    Interestingly, when Graham appeared to testify against the Plaintiff at her criminal trial – as the supposed "private" victim – he appeared in uniform, a fact that troubled the state court judge greatly.

15

       **2.**      **<u>The Officer Defendants</u> – § 1983 (Fourth Amendment), False Arrest, False Imprisonment and Malicious Prosecution**

The Officer Defendants make several arguments in opposition to Plaintiff's § 1983 claim and her state law claims for false arrest, false imprisonment and malicious prosecution.  Having correctly observed that Plaintiff's constitutional claim is limited to the Fourth Amendment, they argue that no liability can exist under § 1983 because the Plaintiff's arrest was based on probable cause. Similarly, they argue that the remaining state law claims fail because Plaintiff's arrest was based on probable cause.[12]  As to the malicious prosecution claim specifically, they further argue that they cannot be liable because they did not, and could not, "institute or continue" Plaintiff's prosecution, which is an element of malicious prosecution.  *See Trussel v. General Motors Corp.*, 53 Ohio St. 3d 142 (1990).  Further, as to <u>all</u> of the remaining claims, the Officer Defendants argue that they are entitled to qualified immunity.

Plaintiff generally responds that a reasonable juror could conclude that probable cause did not exist for her arrest based on the disputed facts.  Similarly, she argues that sufficient issues of material fact exist to prevent the Court's consideration of the qualified immunity defense (federal claim), which requires a determination that the officers' conduct was objectively reasonable.  With specific regard to immunity under Ohio Revised Code § 2744 (state claims), Plaintiff argues that the existence of the factual disputes relative to the officers' motives for arresting her – *i.e.*, helping out a follow police officer with a "girlfriend dispute" – support the view that they acted maliciously or

---

[12]      The Municipal Defendants do not address Plaintiff's claims that she was mistreated as a pre-trial detainee.  While the burden of proof upon a plaintiff asserting such a claim is high, because these Defendants do not challenge her right to pursue such a claim on the current record, Plaintiff is under no obligation to defend it.  Accordingly, the Court concludes that that aspect of her Fourth Amendment claim survives summary judgment as well.

in bad faith, which prevents immunity for a political subdivision's employee under ORC § 2744.03(A)(6).  As to the malicious prosecution claim, Plaintiff argues that, because a reasonable juror could conclude that the officers lacked probable cause to support their actions, summary judgment is inappropriate.

### a.    Probable Cause

"Probable cause to make an arrest exists if the facts and circumstances within the arresting officer's knowledge 'were sufficient to warrant a prudent man in believing that the [arrestee] had committed or was committing an offense.'"  *Pyles v. Raisor*, 60 F.3d 1211, 1215 (6th Cir. 1995) (quoting *Beck v. Ohio*, 379 U.S. 89, 91 91964).  "In general, the existence of probable cause in a § 1983 action presents a jury question, unless there is only one reasonable determination possible."  *Id*.  Because the Court finds that material issues of fact exist to support the Plaintiff's view that her arrest was improper (*i.e.*, not based on probable cause), summary judgment on the surviving federal and state law claims based on a probable cause defense is inappropriate.  Given that Plaintiff was neither indicted, nor convicted, no presumption of probable cause exists.

### b.    Qualified Immunity (state and federal)

In considering a federal qualified immunity defense, courts must consider three things:  1) whether, based on the applicable law, the facts viewed in the light most favorable to the plaintiff show that a constitutional violation occurred; 2) whether the violation involved a clearly established constitutional right of which a reasonable person would have known; and 3) whether the defendant's conduct was objectively unreasonable.  *Feathers v. Aey*, 319 F.3d 843, 848 (6th Cir. 2003).  When multiple versions of the facts exist, however, and the legal question presented (*i.e.*, whether officers acted objectively reasonable) is completely dependent upon which view of the facts is accepted by the jury, as here, the Court cannot grant summary judgment based on qualified immunity.  *Smith v.*

17

*Kim*, 70 Fed. Appx. 818, 821 (6th Cir. 2003); *Flagner v. Wilkinson*, 241 F.3d 475, 480 (6th Cir. 2001).  In this regard, the federal qualified immunity defense is not excepted from Rule 56's general requirement that no genuine issues of material fact exist if summary judgment is to be granted.  The same result applies to the state law immunity defense asserted under ORC § 2744, which permits liability *as to a political subdivision's employee* for conduct that is malicious or in bad faith.  *See* ORC § 2744.03(A)(6).  Because the Court finds that material issues of fact exist to support the Plaintiff's view that the officers acted without probable cause and did so unreasonably, maliciously or in bad faith when they arrested her, summary judgment on the surviving federal and state law claims based on that defense is inappropriate.

> **3.** **The City of Cleveland** – § *1983 (Fourth Amendment – Failure to Train and/or Supervise), False Arrest, False Imprisonment and Malicious Prosecution*

Defendant City of Cleveland opposes Plaintiff's § 1983 claim on two grounds.  First, it argues that it cannot be liable if no underlying constitutional violation occurred – *i.e.*, it adopts the "probable cause" arguments asserted by the Officer Defendants.  Second, citing *Monell v. Department of Soc. Servs. of City of New York*, 436 U.S. 658 (1978), it argues that no liability can result because Plaintiff has presented <u>no evidence</u> that the City has a "policy or practice" of sanctioning its police officers' violations of citizens' constitutional rights.[13]  As to the remaining state law claims, the City asserts that it cannot be liable under the doctrine of *respondeat superior* because it is entitled to immunity pursuant to the Political Subdivision Tort Liability Act, and no exception applies to retract its immunity.  *See* ORC §§ 2744.01(A)(1) and 2744.02(B).

Plaintiff's responses to the Officer Defendants' arguments likewise are asserted in response

---

[13]  As noted previously, the City is not challenging Plaintiff's § 1983 claim based on a pleading deficiency.  Its challenge here is based on a lack of evidence.

to the City's arguments.  Accordingly, the Court need not repeat them.

The City's argument that Plaintiff's § 1983 claim fails because she has presented no evidence that the City has a "pattern or practice" of permitting or encouraging constitutional violations (per *Monell*), is well taken.  First, Plaintiff has not responded to the argument, much less outlined the evidentiary support for her pattern and practice § 1983 claim, as is required of a plaintiff in defending against summary judgment.  In that regard, as with the others, Plaintiff has waived this claim.  Second, as a matter of substance, in so far as the Plaintiff's own characterization of the facts relate only to the officers' potential misconduct, in the unique circumstances of this case, and not the City's adoption of a policy supporting such misconduct, the issues of fact presented do not prevent summary judgment in the City's favor on the Plaintiff's § 1983 claim.  Even the Court's independent review of *all* the evidence presented did not reveal material evidence of a pattern or practice by the City that condones or encourages its officers to violate citizens' constitutional rights at the behest o fits off-duty officers.

As to the state law tort claims, the City is entitled to immunity under Political Subdivision Tort Liability Act (the "Immunity Act").  *See* ORC §§ 2744 *et seq*.  The Immunity Act requires a three-tiered analysis to determine whether a political subdivision should be immune from tort liability.  *Henney v. Shelby City School District,* 2006 WL 747475 (Ohio App. 5th Dist. 2006).  First, the general rule pursuant to § 2744.01(A)(1) is that political subdivisions are not liable in damages when performing either a governmental or proprietary function. Second, once immunity is established, courts must determine whether one of the exceptions to immunity set forth in § 2744.01(B)(1) – (5) apply.  Third, if one of the §  2744.01(B) exceptions applies, immunity can be reinstated if the political subdivision can show that one of the defenses set forth in § 2744.03 applies.

19

Here, the City correctly observes that the provision of police services is a "governmental function," such that immunity generally applies under § 2744.01(A)(1).  The only argument Plaintiff asserts against state law immunity – that factual issues support the finding of "bad faith" or "malice" under § 2744.03(A)(6) – relates to employees (*e.g.*, the officers), but not the political subdivision itself.  Plaintiff has not argued (and for good reason) that any of the exceptions set forth in § 2744.01(B)(1) – (5) apply to deprive the City of immunity in this case.  Accordingly, the general rule prevails and the City is entitled to immunity from liability on the remaining state law tort claims.

For these reasons, the City's motion for summary judgment on Plaintiff's § 1983 claim (Failure to Train / Supervise) and the remaining state law claims for false arrest, false imprisonment and malicious prosecution is **GRANTED**.

## III.  CONCLUSION

Though all parties in this case are adults, with seemingly responsible positions in the community, there is little evidence that anyone – either the Plaintiff or the Defendants – behaved like responsible adults when their lives converged on June 8, 2003.  Whether the Defendants' decisions were sufficiently irresponsible to merit judgment in Plaintiff's favor in this case will be for a jury to decide.  Having stripped this case down to the essential claims against them, it is clear that Defendants are not entitled to judgment as a matter of law on those claims that remain.

For the foregoing reasons, *Defendant Christopher J. Graham's Motion for Partial Summary Judgment* (Doc. 20) is **DENIED in part and GRANTED in part**:

- As to Counts 2, 3, 4, 5, 6, 8, 10, 11 and 12, the motion is **GRANTED in whole** and the claims asserted therein are **DISMISSED**; Plaintiff's § 1983 claim alleged in Count 1 survives <u>in part</u> and is **LIMITED** to an alleged violation of the Fourth

20

Amendment; Count 7 survives _in whole_; and Count 9 survives _in part_ and is **LIMITED** to a negligence claim.

_Defendants', City of Cleveland, Officer James Bresnahan Jr., Lieutenant Mark Ketterer, and Lieutenant Douglas Regrut, Motion for Summary Judgment_ (Doc. 25) is **DENIED in part and GRANTED in part**.

- As to the City, the motion is **GRANTED in whole**.

- As to the Officer Defendants, the motion is **GRANTED in part**.  As to those Defendants, Counts 2, 3, 4, 5, 6, 7, 8, 11 and 12 are **DISMISSED**; Plaintiff's § 1983 claim alleged in Count 1 survives _in part_ and is **LIMITED** to an alleged violation of the Fourth Amendment; Count 9 survives _in part_ and is **LIMITED** to claims for False Arrest and False Imprisonment; and Count 10 survives _in whole_.

Plaintiff's purported claims against Defendant Officer Jamie Cruz are **DISMISSED** for lack of prosecution.

This case is hereby **SET** for trial, which shall commence on **July 10, 2006 at 9:15 a.m.** in Courtroom 16A.  A separate trial order will follow, wherein additional trial related information will be provided.  The parties are hereby **REFERRED FOR MEDIATION** to **Magistrate Judge Kenneth S. McHargh**, which shall be completed **no later than June 1, 2006**.

**IT IS SO ORDERED.**

            **s/Kathleen M. O'Malley**
            **KATHLEEN McDONALD O'MALLEY**
            **UNITED STATES DISTRICT JUDGE**
**Dated:  March 31, 2006**